UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ESSEX W. BAILEY,

               Petitioner,                                    Case Number 04-10101

v.                                                 Honorable David M. Lawson

TERRY FINDER,

               Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

       The petitioner, Essex W. Bailey, presently confined at the Marquette Branch Prison in Marquette, Michigan, has filed a *pro se* application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner was convicted of three counts of third-degree criminal sexual conduct, Mich. Comp. Laws § 750.520d(1)(b), and being a fourth felony habitual offender, Mich. Comp. Laws § 769.12, following a jury trial in the Genesee County, Michigan circuit court in 1997. He was sentenced to fifteen to twenty-five years in prison. The petitioner alleges that his right to a fair trial was violated when the trial court conducted part of the trial in his absence and when the prosecutor committed misconduct by suggesting that the jury could consider the petitioner's failure to testify and his absence from trial in determining his guilt; his right of confrontation was violated by the court's refusal to permit him to cross-examine the complainant about her psychiatric history; the trial court erred in instructing the jury on flight and on the inapplicability of the intoxication defense in this case; and ineffective assistance of trial and appellate counsel. The respondent has filed an answer to the petition asserting that the claims lack merit. The Court agrees, and the petition will be denied.

I.

The petitioner's convictions arose from the rape of his neighbor that occurred in the early

hours of July 28, 1996.  The petitioner was charged with four counts of third-degree criminal sexual

conduct for digitally penetrating the complainant's vagina, two acts of vaginal rape, and one act of

anal rape.  The morning the trial started, the petitioner's trial attorney asked the trial court for

permission for the petitioner to leave the state.  According to trial counsel, the petitioner wanted to

give a kidney to his brother, who lived in Texas.  The trial court denied the request because the

petitioner had made no showing of urgency; the court indicated it would reconsider the request if

such a showing was made.  Jury selection commenced, and the petitioner sat in court during voir dire

and the swearing of the jury.  The jury was instructed to return the following morning when

evidence would be presented.

The next day, the petitioner failed to appear.  The Michigan Court of Appeals recounted the

ensuing events as follows:

> Defense counsel indicated that his efforts to locate defendant had not been
> successful, and the prosecutor stated that defendant had not been located by the
> police who checked:  (1) his house; (2) his neighborhood; (3) the area hospital
> emergency rooms; (4) 911 records; and, (5) the jail.  In response, the trial court
> canceled defendant's bond, authorized a bench warrant for his arrest, and entertained
> suggestions as to how to proceed in his absence.

> Defense counsel noted that defendant's testimony comprised the entirety of their
> evidence.  Defense counsel argued that, because the right to be present at all critical
> stages of a trial is fundamental to due process and because there was no showing that
> defendant had voluntarily absented himself from trial, an adjournment was
> necessary.  The prosecutor pointed out that defendant had been told to be in court at
> 8:30 a.m., and in the hours since then, having not contacted his attorney, shown up,
> or been found, it was reasonable to conclude that defendant had voluntarily absented
> himself from trial.  The prosecutor therefore argued that, given the fact that the jury
> had already been chosen and the witnesses as well as the jurors were present, the trial
> should go forward.  The trial court made the following ruling:

Let me indicate, for the record, that [defendant] was present in court yesterday when we did select the Jury, and swear the Jury, and impanel the Jury; and he was present in court when I informed everyone as to the starting times for today's trial. Also indicate that he did request an adjournment, which was denied. It is now 11:15, and [defendant] is not to be found. [The prosecutor] has related the efforts that have been made by the prosecution and the police to locate [defendant] this morning, all without success. [Defense counsel] has indicated that [defendant] has not contacted his office for any directions or further instructions, and that, apparently, the most telling thing to me is that the address where [defendant] claims to be living, the individuals there do not know where [defendant] is located.

I am aware of the importance of an individual's constitutional right to be present at trial as set down in [*Illinois v. Allen*, 397 U.S. 337; 90 S Ct 1057; 25 L. Ed. 2d 353, *reh den* 398 U.S. 915 (1970)]. But I also am aware of a line of cases in Michigan that indicate, that if a defendant voluntarily absents himself from the courtroom after the trial has begun, that he has waived his right to be present and the trial may proceed to a conclusion. In [*People v. Swan*, 394 Mich. 451; 231 NW 2d 651 (1975),] [the] Supreme Court reversed a Court of Appeals decision that had set aside a conviction where the trial judge directed that the trial be completed in the defendant's absence and the jury found the defendant guilty of armed robbery. Court reinstated the conviction and sentence.

And also, the case of [*People v. Gross*, 118 Mich.App 161; 324 NW 2d 557 (1982)], which as Counsel indicated, did arise out of this Circuit, and that appears to be the one that is very close to our factual situation. Indicates on September 25, 1980, the trial commenced and the jury was impaneled and sworn. I don't [know if] testimony was taken that day. There's no indication that it was. A trial commences. The jury was impaneled and sworn. Defendant, who was on bond, was present on that day. However, when the court resumed the next day, the defendant failed to appear. Court waited approximately two hours. There were indications made on the record from defense counsel that the defendant knew he was to appear the next morning. There's [sic] indications that the police officers had dispatched a car to the address given by the defendant, and following that presentation, the trial court came to the conclusion that the defendant had voluntarily absented himself from the trial, and came to the conclusion that the trial would proceed without him. In that case, the defense counsel did request an adjournment due to the defendant's

> absence. On appeal, the Court of Appeals upheld the decisions of the lower court, and affirmed the defendant's conviction and sentence.
>
> In this case, based upon the record before me, I have to conclude that the defendant's absence is voluntary. There is no other indication before me that his absence is anything but voluntary, and I so find. As such, the trial will continue and proceed to conclusion with or without [defendant], since he's voluntarily absented himself from the court, he can voluntarily appear at any portion in the trial that he so-chooses. And I do intend to go forward today with the trial, and bring it to a conclusion tomorrow.

The trial court instructed the jury that they were to draw no inference from defendant's absence, and for the balance of the trial, defendant never reappeared.

*People v. Bailey*, No. 205589, 1999 WL 33446513, at *2-4 (Mich. Ct. App. Apr. 27, 1999)

(alterations in original). Before evidence was taken, the court instructed the jury as follows:

> Now, it is going to be obvious to you, as you look around the courtroom, that Mr. Bailey is not present. I want you to understand that Mr. Bailey has the absolute right to be present or not be present at a trial. It is not required that he be present for a trial to continue. You are not to draw any inference from that whatsoever, and I cannot emphasize that enough. You are to draw no inference from the fact that he is not present.

Trial Tr. vol. II, 164, May 29, 1997.

The complainant had been institutionalized seven times for being a danger to herself. The most recent instance occurred more than twelve years before the trial. Prior to trial, the court ruled that the petitioner could not cross-examine the complainant about her mental health history: "I don't believe that the fact that she was institutionalized more than 12 years ago for something that she explains as her reaction to situations when she gets angry at people, that it is relevant in this case." Trial Tr. vol. II, 189, May 29, 2007. The court did permit the petitioner's attorney to cross-examine the complainant about her memory problems.

Trial counsel's theory at trial was that the sex was consensual, but that the complainant reported the incident as rape because the petitioner threatened to report her to the health department for having herpes. He also asserted that the petitioner lied to the police about having sex with the complainant because they are of different races. During opening statements, defense counsel stated as follows:

> Well, when Essex comes in, he's going to testify, he's going to get up and tell you that after he and Judy had sex that it went down a lot different than what Judy said. But after he and Judy had sex, that she told him that she had Herpes. And Essex, as I think, I don't know – a lot of us are probably in a situation with husbands and wives where that would be something that would make us upset – but with someone that you barely knew, and again, these people may be a little bit different than we are as far as their promiscuity and things like that.
>
> But needless to say that when Essex heard from Judy that she had Herpes, he was upset. And Essex told her, you know, you're not supposed to do this, I'm going to report you to the health department because, you know, you've had sex with me while having Herpes. So Essex went home. . . .
>
> Now Essex told the police, when he was questioned after he was arrested there at his house, that the assault did not happen, that he did not have sex with this girl. . . . And Essex is going to tell you, because he was born in Mississippi, he spent a lot of his childhood in Georgia, he's spent a good part of his childhood in the South, and not only is there the taboo here, at least as far as the Southern taboo of a black man raping a white woman, there's also the underlying of a [sic] black man with a white woman.

Trial Tr. vol. II, 173-75, May 29, 1997.

At trial, the complainant testified that she let the petitioner into her house because he had been locked out of his own. When the petitioner asked the complainant if she would have sex with him, she refused. She testified that he jumped on top of her, put his hands around her throat, and threatened to kill her if she screamed. *People v. Bailey*, No. 205589, 1999 WL 33446513, at * (Mich. Ct. App. Apr. 27, 1999). The complainant testified that the petitioner then inserted his fingers into her vagina, vaginally raped her twice, and anally raped her.

The petitioner's attorney cross-examined the complainant about her memory:

Q. No, Miss Baisden, do you have a hard time remembering things?
A. Yes, sir.
. . .
Q. So today you can't recall how long he was there on that night?
A. No, sir.
Q. Okay. Now you're not being able to remember things, is that – you receive SSI because of that; correct?
A. I honestly don't know.
. . .
Q. Okay. Mis Baisden, how old are you?
A. Fifty-four.
Q. Okay. You remember testifying at preliminary exam, again, right, back at the other courtroom?
A. Yes.
Q. Okay. Do you remember testifying there that you were 43 years old?
A. Yes. . . . Through the whole excitement, I forgot my age.

Trial Tr. vol. II, 269, 271-72, May 29, 1997.

After the complainant reported the rape to the police, Flint Police Sergeants Alan Werhli and Clarence Banks went to the petitioner's home to speak with him. Sergeant Werhli testified at trial that the petitioner ran up a set of stairs when he saw the officers in his apartment. The officers caught up with the petitioner and arrested him.

Flint Police Sergeants Darryl Patterson and Barry Saunders testified that they interrogated the petitioner after his arrest, stating that the petitioner denied having sex with the complainant. Sergeant Saunders also testified that he had taken the complainant's clothes and sheets to the crime lab. Dr. Stephen Milligan, an expert in DNA analysis with the DNA testing unit in East Lansing, analyzed the semen sample recovered from the complainant's sheets and compared it with a sample of the petitioner's blood. He testified that "the statistical probability that the semen recovered from complainant's sheets came from someone other than [the petitioner] was '1 in 3.1 billion.'" *Id*. at *2.

During closing argument, the prosecutor made a number of statements that the petitioner believes were inappropriate comments on his absence or failure to testify:

> Finally the third subject matter, is that testimony of the victim need not be corroborated. I believe, Mr. Kennedy, in his opening statement said "This is liar's match between the victim and the defendant." And I'm sure Mr. Kennedy's no ill will on that. But the victim, her statement need not be corroborated. It is not necessary that the evidence be of testimony other than the victim. That testimony proves guilt beyond a reasonable doubt, of course, if you believe the testimony.
>
> So this liar's match business, first of all, on that liar's match, Judy's the one that testified. And she has testified there's no consent. She has testified what happened. Moreover, I submit to you there is corroboration, because everything she said, little bits and pieces, was corroborated by other people. No, there was no one else in that apartment, not even the dog in that room. But what she said happened as far as that ejaculated [sic], yeah, there was semen there. . . .
>
> The defendant, when he's confronted, tries to run while he's walking away, and he lies. If there's consent, why didn't he say it? Judy, what did she do? She said what happened. She withstands testimony on cross-examination and preliminary examination. Withstands testimony on cross-examination before you folks. Think how much fun it must be to have to come tell strangers, not once, but twice, in a courtroom with people watching, about penises and vagina, people going in your privates. . . . And she's withstood all this, everything involved in the legal system, because she knows the truth, and she wants the truth to be known. . . .
>
> What the defense attorneys says [sic], what I say, that's not evidence. The evidence comes from the chair and from the exhibits. Remember, at the beginning of the case, Mr. Kennedy said you're going to hear evidence about Herpes being reported to the health department and all that other crap; remember that? Do you see any evidence of that? Anybody, any witness from that stand say that? . . . Any evidence of consensual sex? Nobody said it. No witnesses said it. Nothing said. Why? Because a basic fact, basic premise that we all operate under. The truth is consistent, and the truth is that she was raped. So we've had a witness says she'd been raped. We have corroborative evidence that she's been raped. No evidence of consent has been presented. Why? Because it didn't happen, because there was no consent, because there was rape.

Trial Tr. vol. III, 406-07, 420-21, 423, May 30, 1997.

After closing argument, the trial court gave instructions to the jury. The court repeated its prior warning that the petitioner's absence or failure to testify could not be considered. The court also gave instructions on flight and an intoxication defense:

Every defendant has the absolute right not to testify. When you decide this case you must not consider the fact that he did not testify. It must not affect your verdict in any way. And as I have already instructed you, the fact that the defendant is not present in the courtroom should not be – you should not give an inference to that one way or another and it should not enter into your deliberations in this case. . . .

There has been some evidence that the defendant voluntarily ingested alcohol or drugs when the alleged crime was committed. Should say "had ingested" alcohol or drugs when the crime was committed. The voluntary ingestion of drugs is not a defense to the crime charged here; that is, the crime of Criminal Sexual Conduct in the Third Degree. So it does not excuse the defendant if he committed this crime. . . .

There has been some evidence that the defendant ran up the steps when the police came to arrest him. This evidence does not prove guilt. A person may run or hide for innocent reasons such as panic, mistake or fear. However, a person may also run or hide because of a conciousness of guilt. You must decide whether the evidence is true, and if true, whether it shows the defendant had a guilty state of mind.

Trial Tr. vol. III, 426, 435-36, May 30, 1997.

The jury found the petitioner not guilty on the charge of digital penetration but guilty on the other charges. After the trial, the petitioner was found and taken into custody. At sentencing, the petitioner apologized for not appearing for the trial:

I want you to know that in no way was I tryin' to disrespect the Court when I didn't show up for trial; I was only tryin' to help my brother, he was dyin' at the time. I made a bad choice by not comin' back to trial, it is somethin' I know I have to live with for the rest of my life, but I feel that I only did what any person would have did concernin' a loved one in they family. I asked the Court at the time for a continuance. Maybe I didn't give all the details I should have gave at the particular moment – at the time concernin' my brother's state, the condition he was in at the time. That's my mistake.

Sent. Tr. 19, July 30, 1997. Because the petitioner was a fourth felony habitual offender, he was sentenced to fifteen to twenty-five years in prison on all counts.

The petitioner thereafter filed a motion for a new trial due to his absence from the first trial. The trial court denied the motion, stating:

Well, at the time that we tried this case we selected a jury the first day. We recessed for the day, everyone was instructed to return the next morning. [Defendant] did not return. If I recall correctly, we spent about three hours trying to locate [defendant]. There was some indication that he may have gone to Texas, and, in fact, [defendant] did make a motion prior to trial that the matter be adjourned so that he could go to Texas.

The fact of the matter is, it's my understanding he did not go to Texas and just made a decision, apparently, I can't speak for [defendant] on what his motivations were and he's not put anything before this Court in terms of an affidavit or sworn testimony to describe what his state of mind was and what his intentions were at the time, but the fact of the matter is he did not appear.

We waited. We sent the police out, we tried to contact his family. He did not appear. We proceeded to trial. He did not appear the next day as well, we proceeded to trial and I recall that we made a record at the time he did not appear and I don't have that transcript before me, but I certainly recall that argument was made and there were several cases that were cited for the authority that this Court had the ability to continue its trial with or without [defendant] which we chose to do.

Approximately two weeks after the – or, probably – I think less than two weeks after the trial, [defendant] was arrested on a bench warrant and he was sentenced, I believe, on July 30, 1997.

I'm not persuaded that an injustice was done. The factual support for the convictions was there, the testimony was there. To say that had [defendant] appeared at trial and not chosen to absent himself would have resulted in a different verdict is sheer speculation and I'm going to deny the motion for a new trial.

Mot. Hr'g Tr. 5-6, Sept. 15, 1997.

The petitioner filed a direct appeal in the Michigan Court of Appeals in which he argued that (1) his rights were violated when the trial continued in his absence; (2) the prosecutor committed misconduct; (3) his confrontation right was violated by the trial court's refusal to permit him to cross-examine the complainant about her psychiatric history and memory loss; and (4) the trial court's jury instructions on flight and the intoxication defense were error. The Michigan Court of Appeals affirmed the petitioner's conviction. *People v. Bailey*, No. 205589, 1999 WL 33446513, at *1-5 (Mich. Ct. App. Apr. 27, 1999). The petitioner filed a delayed application for leave to appeal

in the Michigan Supreme Court presenting the same claims presented to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Bailey*, 461 Mich. 922, 604 N.W.2d 679 (1999).

The petitioner thereafter filed a motion for relief from judgment in the state trial court in which he asserted ineffective assistance of trial and appellate counsel. The trial court denied relief. *People v. Bailey*, No. 96-54452-FH (Genesee County Cir. Ct., Apr. 18, 2002). The petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals and Supreme Court. The applications were denied for failure "to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Bailey*, No. 244005 (Mich. Ct. App. Mar. 20, 2003); *People v. Bailey*, 469 Mich. 909, 670 N.W.2d 220 (2003).

The petitioner now seeks habeas relief on the following claims:

I.    The trial court denied defendant his constitutional right of trial by jury when it chose to continue the trial in defendant's absence where defendant had not made a knowing and informed waiver of his right to be present.

II.    The prosecutor's repeated suggestions to the jury that it could consider defendant's failure to testify and absence from trial violated defendant's constitutional right of silence, and the court erred reversibly when it declined to grant a mistrial.

III.    The trial court denied defendant his constitutional right to confront his accuser when it refused to allow the defense to cross-examine the complainant about her psychiatric history and the relationship between her psychiatric history and her problems of memory loss.

IV.    The court erred reversibly when it instructed the jury on flight and the inapplicability of the intoxication defense, over defense objection, when there was no evidence of defendant's flight and where the intoxication defense was not raised by the defense.

V.    Appellate counsel was ineffective for failing to assert Sixth Amendment and Fourteenth Amendment claims and for failing to challenge the trial court's denial of a continuance or adjournment.

VI.    Trial counsel was ineffective for failing to call an expert witness to challenge the complainant's competency due to her history of mental illness.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody

pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11; *see also Davis v. Coyle*, 475 F.3d 761, 766 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

The petitioner first claims that his constitutional right to be present at his trial was violated when the trial continued in his absence. The Michigan Court of Appeals rejected the petitioner's claim, finding that the petitioner's voluntary absence from the courtroom after the trial had commenced constituted a voluntary waiver of his right to be present at his trial.

"One of the most basic of the rights guaranteed by the Confrontation Clause of the Sixth Amendment is the accused's right to be present in the courtroom at every stage of his trial." *Illinois v. Allen*, 397 U.S. 337, 338 (1970). The Supreme Court has further recognized that a criminal defendant's right to be present is also protected by the Due Process Clause in situations in which the defendant is not actually confronting evidence or witnesses against him. *United States v. Gagnon*, 470 U.S. 522, 526 (1985). However, a criminal defendant's constitutional right to be present at every stage of a felony trial may be waived. *Finney v. Rothberger*, 751 F.2d 858, 862 (6th Cir. 1985). A criminal defendant's voluntary absence from a trial that is not for a capital offense constitutes a waiver of his right to be present. *Diaz v. United States*, 223 U.S. 442, 455 (1912); *State of Ariz. v. Hunt*, 408 F.2d 1086, 1096 (6th Cir. 1969). Moreover, a trial court may find a defendant's absence to be voluntary and therefore an effective waiver of his right to be present even without a showing that the defendant knew or had been expressly warned by the trial court that the trial would continue in his absence. *Taylor v. United States*, 414 U.S. 17, 19-20 (1973); *United States v. Riddle*,

249 F.3d 529, 534 (6th Cir. 2001) (holding that colloquy on the record is not required to establish a knowing waiver of defendant's right to be present during critical stages of trial).

The state courts' conclusion that the petitioner was voluntarily absent from trial was reasonable in light of the evidence presented in the state court proceedings. The petitioner had been present on the first day of trial and was aware that the trial would continue the following day. He failed to show that his absence from court was involuntary. Although the petitioner claimed that he absented himself from his trial in order to go to Texas to donate one of his kidneys to a dying brother, the state court of appeals noted that petitioner never presented any competent evidence that he had a brother, that this brother was dying in Texas, or that the petitioner took steps to donate his kidney to his brother. The court of appeals further noted the trial court's belief that the petitioner never actually went to Texas. *Bailey*, 1999 WL 33446513, at *4 n.1. The state courts' determination that the petitioner was absent voluntarily was reasonable.

The state courts also properly applied clearly established federal law. The state court of appeals noted that "[a] defendant's voluntary absence from the courtroom after a trial has begun waives his constitutional rights to be present." *Bailey*, 1999 WL 33446513, at *5. This is in accord with the law discussed above. Furthermore, in *Taylor* which involved similar facts, the defendant was present for the beginning of the trial but failed to return after a lunch recess. The Court concluded that he waived his right to be present. 414 U.S. at 19-20. The petitioner is not entitled to habeas relief on this claim.

B.

The petitioner next claims that he was deprived of a fair trial because the prosecutor's closing argument contained several impermissible comments on the petitioner's failure to testify.

One such comment involved the prosecutor pointing out repeatedly the complainant version of the events and emphasizing that no evidence was presented to contradict it. The petitioner points to the prosecutor's remark in closing argument, "If there's consent, why didn't he say it?" Trial Tr. vol. III, 420, May 30, 1997. The prosecutor later asked, "Any evidence of consensual sex? Nobody said it. No witnesses said it. Nothing said." *Id.* at 423.

In rejecting the petitioner's prosecutorial misconduct claim, the Michigan Court of Appeals indicated that when viewed in context, the prosecutor's question, "If there's consent, why didn't he say it?" was a comment on the fact that the petitioner had denied having sex at all with the victim when he was questioned by the police. With respect to the remaining remarks, the state court held that in light of the theory advanced by defense counsel in his opening argument, it was permissible for the prosecutor to argue that the prosecution's theory was supported and the defense theory was not. *Bailey*, 1999 WL 33446513, at *6.

In *Griffin v. California*, 380 U.S. 609 (1965), the Supreme Court held that neither the court nor the prosecutor may invite the jury to infer guilt from the defendant's decision not to testify. "It is axiomatic that a defendant in a criminal trial need not testify or produce any evidence, and that a prosecutor may not comment on the absence of such." *United States v. Bond*, 22 F.3d 662, 669 (6th Cir. 1994). However, a prosecutor ordinarily is "entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel." *Angel v. Overberg*, 682 F.2d 605, 607-08 (6th Cir. 1982) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). The prosecutor may summarize the evidence and comment on its quantitative and qualitative significance. *Bond*, 22 F.3d at 669.

In *Lockett v. Ohio*, 438 U.S. 586, 594-95 (1978), the Supreme Court held that the prosecutor's repeated remarks that the State's evidence had been "unrefuted" and "uncontradicted" did not constitute an impermissible comment on the defendant's failure to testify. In that case, the defendant's counsel had "clearly focused the jury's attention on [the defendant's] silence" by outlining the defendant's contemplated defense in his opening argument stating to the jury and the court near the end of the case that the defendant would be the next witness, even though ultimately she did not testify. *Id.* at 595. "[W]hen viewed against this background, it seems clear that the prosecutor's closing remarks added nothing to the impression that had already been created by Lockett's refusal to testify after the jury had been promised a defense by her lawyer and told that Lockett would take the stand." *Ibid.*

The Michigan Court of Appeals' decision is consistent with this precedent. The petitioner's trial attorney had indicated in his opening statement that the case would amount to a credibility contest between the victim and the petitioner and further promised that the petitioner would testify that the sex had been consensual. As in *Lockett v. Ohio*, 438 U.S. 586, 594-95 (1978), the prosecutor's comments were permitted to emphasize that the attorneys' statements did not constitute the evidence in the case, and defense counsel's opening statement could not be considered in the absence of the evidence he has promised. Defense counsel had already focused the jury's attention on the petitioner's silence by outlining the petitioner's consent defense in his opening statement and promising the jury that petitioner would testify on this issue.

In addition, the prosecutor's remarks that the victim was the only person to testify as to whether the sex was consensual did not constitute an impermissible comment upon the petitioner's failure to testify. In *Lundy v. Campbell*, 888 F.2d 467, 478 (6th Cir. 1989), the Sixth Circuit held

that a prosecutor's statements during closing argument that the "only story" concerning the crimes came from the state's witnesses did not deprive the defendant of a fair trial. In so ruling, the Sixth Circuit held that the comment was not manifestly intended to reflect upon the defendant's silence, nor was it of such character that the jury would naturally and necessarily take it as such.

Finally, to the extent that any of the prosecutor's remarks could be construed as comments upon the petitioner's absence from the courtroom, there would be no constitutional violation. A prosecutor's comments regarding a defendant's absence from court does not amount to an improper comment upon a defendant's failure to testify. *Resnover v. Pearson*, 965 F.2d 1453, 1465 (7th Cir. 1992). The petitioner is therefore not entitled to habeas relief on this claim.

### C.

The petitioner next claims that the trial court impermissibly limited the scope of cross-examination when it refused to allow defense counsel to question the victim about her prior hospitalizations for mental illness. The petitioner wanted to confront the victim with her past history of hospitalizations in order to demonstrate a defect in her memory. The Michigan Court of Appeals concluded that "the trial court's decision not to allow defense counsel to inquire into the collateral issue of complainant's institutionalization, which had only an attenuated and undemonstrated nexus to complainant's general credibility, did not deny defendant his constitutional rights to confront witnesses." *Bailey*, 199 WL 33446513, at *7. Moreover, it was harmless because the petitioner was permitted to cross-examine the witness about her memory problems.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "[T]he Sixth Amendment's right of an accused to confront the witnesses against him

-17-

is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403 (1965).  The Confrontation Clause promotes reliability in criminal trials by providing defendants the opportunity for cross-examination.  *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987); *see also Stevens v. Bordenkircher*, 746 F.2d 342, 346 (6th Cir. 1984). The rights of confrontation and cross-examination "have ancient roots" which the "Court has been zealous to protect . . . from erosion."  *Pointer*, 380 U.S. at 404-05 (quoting *Greene v. McElroy*, 360 U.S. 474, 496-97 (1959)).  Cross-examination has been described as "the greatest legal engine ever invented for the discovery of truth."  *California v. Greene*, 399 U.S. 149, 158 (1970) (citation and internal quotations omitted).

The Sixth Circuit recently re-emphasized that cross-examination is a vital aspect to an accused's rights under the Confrontation Clause, but the right to cross-examine is not limitless. *Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir. 2006).

> [T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.  And, as we observed earlier this Term, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."

*Delaware v. Van Arsdale*, 475 U.S. 673, 679 (1986) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam)).

When a trial judge merely limits cross-examination (as opposed to outright denial of that right), "the inquiry for the reviewing court is 'whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory.'" *Stewart*, 468 F.3d at 348 (quoting *Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989)).  The pivotal point,

according to the Sixth Circuit, is whether "the defense is not allowed to plac[e] before the jury facts from which bias, prejudice or lack of credibility of a prosecution witness might be inferred." *Dorsey*, 872 F.2d at 167 (alteration in original) (internal quotation marks omitted). "[I]t is the state's prerogative to define what evidence is relevant to the case in the first place." *Miskel v. Karnes*, 397 F.3d 446, 452 (6th Cir. 2005) (citing *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979)). Basic to the right of cross-examination, however, is the opportunity to challenge the witness's inclination to tell the truth and her ability to do so. The cross-examiner must be allowed to explore defects in the witness's ability to perceive and remember events, ambiguities and abilities to communicate them accurately, and character defects or motives that might induce the witness to shade her testimony or outright lie.

The Michigan Court of Appeals determined that defense counsel had that opportunity, and this Court believes that it applied the correct standard in assessing the constitutional efficacy of the cross-examination opportunity. The decision of the state court was neither contrary to nor an unreasonable application of Supreme Court precedent. The jury in this case had enough information to assess the defense theory that the complainant was not a credible witness due to her memory, despite the limits placed on defense counsel. Any omitted evidence concerning the complainant's history of mental illness, when evaluated in the context of the entire record, fails to "create[] a reasonable doubt that did not otherwise exist." *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006) (quoting *Washington v. Shriver*, 255 F.3d 45, 57 (2nd Cir. 2001)). Moreover, even if the trial judge's limitations on cross-examination were considered a violation of the Confrontation Clause, this Court cannot conclude that "'the prejudicial impact of constitutional error in [the] state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht [v.*

*Abrahamson*, 507 U.S. 619 (1993)]'" requires issuance of the writ in this case. *Vasquez v. Jones L*, __ F.3d __, __ 2007 WL 2176985, *6 -7 (6th Cir. 2007) (quoting *Fry v. Pliler*, __U.S.__, __, 127 S. Ct. 2321, 2328 (2007).

The petitioner was not denied a fair trial or his constitutional right to confront witnesses when the trial court limited his cross examination of the complainant. The petitioner is therefore not entitled to habeas relief on this claim.

### D.

The petitioner next contends that the trial court erred when it read the jury the state pattern instruction regarding the inapplicability of voluntary intoxication as a defense to the general intent crime of third-degree criminal sexual conduct and when it instructed the jury that the defendant's flight could be considered as consciousness of guilt. The Michigan Court of Appeals found that the evidence supported these jury instructions.

The petitioner is entitled to habeas relief only if the defective jury instructions "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). A federal court may not grant the writ of habeas corpus on the ground that a jury instruction was incorrect under state law, *see Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991), and "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147). On habeas review, this Court is bound by the state court's interpretation of state law. *See Bradshaw v. Richey*, 546 U.S. 74, __, 126 S. Ct. 602, 604 (2005) (per curiam).

This Court is not persuaded that the jury instructions as given denied the petitioner a fair trial or so infected the entire trial that the resulting conviction violates due process. Any question about the propriety of the flight instruction is not reviewable in this case because the Michigan Court of Appeals determined that the flight instruction was proper under the facts of this case. In addition, the trial court instructed the jury that evidence that the petitioner fled the crime scene did not necessarily prove guilt because people may run or hide for innocent reasons. Because the flight instruction could have actually worked to petitioner's benefit in the sense that it clarified that flight alone is insufficient to prove guilt, the petitioner is unable to establish that this instruction deprived him of a fair trial.

The petitioner further asserts that the trial court should not have given the intoxication instruction because the defense never suggested that the petitioner's use of alcohol or marijuana on the night in question provided an excuse for the petitioner's crimes. Under Michigan law, intoxication is not a defense to the general intent crime of third degree criminal sexual conduct. *People v. Davis*, 102 Mich. App. 403, 405-09, 301 N. W.2d 871, 873-74 (1980). In this case, there had been evidence that the petitioner drank alcohol and used marijuana on the night in question. The trial court's instruction that voluntary intoxication was not a defense to the crime of third-degree criminal sexual conduct was a proper reflection of Michigan law and therefore does not provide a basis for habeas relief. The Court concludes, therefore, that the state court's resolution of the jury instructions claim is neither contrary to nor an unreasonable application of Supreme Court precedent. Habeas relief is not warranted on this claim.

E.

The petitioner's last two claims assert ineffective assistance of trial and appellate counsel. These claims were asserted in the state courts in a post-conviction motion for relief from judgment and ruled upon by the trial court. The trial court rejected the claim because the petitioner's brief failed to explain what actions or omissions by his attorneys constituted ineffective assistance. The state appellate courts denied leave to appeal that decision.

1.

The petitioner claims his trial counsel should have called an expert psychiatric witness at trial to establish that the victim had a history of mental illness that included a problem with her memory. The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if counsel's representation falls below an "objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Moreover, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to

-22-

undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

The petitioner's trial counsel was not deficient for failing to call an expert witness to comment on the complainant's history of mental illness. The petitioner has offered nothing other than speculation that an expert witness could have been obtained to provide such testimony. Moreover, such testimony would not have exculpated the petitioner. "A defense counsel has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant." *Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004). Finally, the trial court ruled that the complainant's history of mental illness was not relevant. Because the trial court likely would have excluded such expert testimony, the petitioner cannot show that he was prejudiced by his trial counsel's alleged deficient performance. The petitioner has failed to demonstrate that he was denied the effective assistance of trial counsel.

2.

The petitioner asserts that his appellate counsel was ineffective for failing to assert claims based on the Sixth and Fourteenth Amendments and for failing to challenge the trial court's denial of a continuance or adjournment when the petitioner did not appear for the second day of trial. To prevail on a claim of ineffective assistance of appellate counsel, the petitioner must demonstrate that appellate counsel's performance was deficient and that the deficient performance prejudiced the appeal. *Strickland*, 466 U.S. at 687. A court evaluating a claim of ineffective assistance of appellate counsel should consider several factors to determine whether counsel's performance fell below an objective standard of reasonableness, including the eleven enumerated factors set forth in *Mapes v.*

*Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999); *see also Franklin v. Anderson*, 434 F.3d 412, 429 (6th Cir. 2006). Appellate counsel need not raise every nonfrivolous argument on direct appeal, but she must exercise reasonable professional judgment. *Joshua v. DeWitt*, 341 F.3d 430, 441, (6th Cir. 2003) (citing *Jones v. Barnes*, 463 U.S. 745, 751-53 (1983)). When ignored issues are clearly stronger than those presented, the presumption of effective assistance of appellate counsel is overcome. *Ibid.* A petitioner is prejudiced by appellate counsel's deficient performance if a reasonable probability exists that, but for counsel's deficient performance, he would have prevailed on appeal.

None of those factors matters in this case, however, because the petitioner's appellate attorney in fact did make the arguments he claims were not made. Gail Rodwan represented the petitioner on appeal. Pages eight through eleven of the brief filed in the Michigan Court of Appeals contain these arguments. Ms. Rodwan alleged that the continuation of the trial during the petitioner's absence violated the Sixth and Fourteenth Amendments, and that the trial court should have granted an adjournment. Because the petitioner's claim has no basis in fact, he is not entitled to relief.

### III.

For the foregoing reasons, the Court finds the petitioner has not shown that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt # 3] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  August 28, 2007

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 28, 2007.

s/Felicia M. Moses
FELICIA M. MOSES